UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Liberty Surplus Insurance Corporation, | ) | C/A No. 7:25-cv-6449-BHH-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Keith L Richards, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| Keith L Richards, | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Liberty Surplus Insurance Corporation, | ) | |
| | ) | |
| Counter Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Liberty Surplus Insurance Corporation's ("Liberty") Motion for Preliminary Injunction (ECF No. 22), Motion to Strike (ECF No. 25), and Motion for Summary Judgment (ECF No. 31), as well as Keith L. Richards' ("Richards") Motion for Summary Judgment (ECF No. 24). Richards is proceeding *pro se*, and, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this United States Magistrate Judge is authorized to review all pretrial matters in cases involving *pro se* litigants and submit findings and recommendations to the district court.

1

## BACKGROUND AND FACTUAL ALLEGATIONS

On or about February 1, 2025, an independent driver was operating his vehicle using the Uber rideshare application with Richards riding as a passenger in the back seat. ECF Nos. 31-2 at 2; 17-2 at 8. While traveling in Spartanburg County, South Carolina, the independent driver was waiting to merge into a traffic circle and was rear-ended. ECF Nos. 31-2 at 2; 1-3 at 2. The independent driver and the at-fault driver exited their vehicles, observed that there was no damage, and decided not to make a police report. ECF No. 31-2 at 2. The independent driver then proceeded to drop Richards off at his destination. *Id.*

Later that day, Richards sought medical treatment at Spartanburg Medical Center and called the police to make a report. ECF Nos. 31-2 at 2; 31-6 at 3. The reporting officer documented that Richards showed him a video and that he "observed no physical damage to the vehicle. There was no evidence on the video that the vehicle was involved in a collision." ECF No. 31-2 at 2. The reporting officer also documented that Richards claimed to have back and leg pain. *Id.* X-rays of Richards' cervical and lumbar spine revealed "normal" findings with "[n]o evidence of acute fractures, dislocations or neck injuries or low back injuries." ECF No. 31-6 at 3. Richards was diagnosed with an acute cervical strain, prescribed Motrin and Robaxin, and released from care. *Id.* at 3-4.

On or about February 2, 2025, the independent driver reported the accident to Uber. ECF No. 17-2 at 40. During this time, Liberty was an insurer to Rasier, LLC/Uber Technologies, Inc. and its subsidiaries. ECF No. 31-4. Liberty documented that the independent driver reported that "the tap on [his] bumper was so light that [his] car barely moved at the impact of the hit." ECF No. 1-3 at 3. On February 6, 2025, Richards contacted Liberty regarding the accident. ECF No. 31-3 at 2-10. Liberty contends that because no identifying personal information was known about

2

the at-fault driver, the claim was opened as a John Doe uninsured motorist claim under the policy that Liberty issued to Rasier, LLC/Uber Technologies, Inc. and its subsidiaries.  ECF Nos. 31 at 3; 1-3 at 3.

Richards alleges that he suffered significant injuries from this accident, including dental trauma, a concussion/mild traumatic brain injury ("TBI"), a cervical strain, and aggravation of his pre-existing injuries from earlier accidents.  ECF No. 17 ¶ 4.  Richards contends that he had previous injuries from a tractor-trailer accident on December 7, 2023, an accident involving a federal probation officer on June 10, 2024, and an accident with a drunk driver on July 16, 2024. *Id.* ¶ 6.

Approximately one month after the accident, Richards sought medical treatment at Grady Hospital Emergency Department, where he underwent further diagnostic testing, including a CT scan of his head and brain, a CT scan of his cervical spine, an x-ray of his femur, and an x-ray of his foot.  ECF No. 31-7 at 2.  Richards attached notes from this visit, which state that Richards presented with complaints following a motor vehicle crash in February and listed "concussion/mild TBI."  ECF No. 17-2 at 6.  Richards' after-visit summary lists his diagnoses as "history of seizures" and "headache due to trauma."  *Id.* at 7.  Richards was referred to a neurologist.  *Id.* at 6-7.  Notes reflect that Richards reported hitting his head on the back of the seat in the accident and experiencing headaches, neck pain, and pain in his femur.  *Id.* at 8.  Richards also attached documentation regarding his previous accidents.  *Id.* at 12-27.

Liberty filed a Complaint on June 30, 2025, seeking declaratory and injunctive relief.[1]  ECF No. 1.  Richards filed an Answer on July 23, 2025, which appeared to assert a counterclaim for breach of contract.  ECF No. 8.  On August 6, 2025, Liberty filed a Motion to Strike Richards' Answer pursuant to Federal Rule of Civil Procedure 12(f).  ECF No. 16.  On August 22, 2025, Richards filed an Amended Answer and Counterclaims for (1) declaratory judgment "that coverage exists and policy limits apply"; (2) third-party beneficiary enforcement based on Liberty's refusal to honor obligations owed to Richards as an intended beneficiary of the insurance policy; (3) improper claims practices in violation of S.C. Code Ann. § 38-59-20 based on Liberty's refusal to pay, "misrepresentations, delay, failure to investigate, and inadequate settlement tactics"; (4) fraud by omission based on Liberty knowingly concealing the $1,000,000 policy limit and misleading Richards into believing that the policy limit was $25,000; (5) negligence and vicarious liability based on the independent driver's failure to report or document the accident; and (6) punitive damages.  ECF No. 17.

Liberty filed a Motion for Preliminary Injunction on August 29, 2025, ECF No. 22, to which Richards filed a Response on September 9, 2025, ECF No. 28.  Richards filed a Motion for Summary Judgment on September 2, 2025, ECF No. 24, to which Liberty filed a Response on September 16, 2025, ECF No. 32.  On September 5, 2025, Liberty filed a Motion to Strike Plaintiff's Amended Answer and Counterclaims, ECF No. 25, and Richards filed a Response on September 17, 2025, ECF No. 34.  Liberty filed a Motion for Summary Judgment on September 16, 2025, ECF No. 31.  On September 17, 2025, pursuant to *Roseboro v. Garrison*, 528 F.2d 309

---

[1] Liberty filed a Complaint in federal court based on diversity jurisdiction due to Richards' demands exceeding $75,000 and complete diversity of citizenship existing between the parties. ECF No. 1 ¶ 5.

(4th Cir. 1975), the Court advised Richards of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately. ECF No. 35. Richards filed a Response to Liberty's Motion for Summary Judgment on September 29, 2025. These matters are ripe for review.

## APPLICABLE LAW AND ANALYSIS

**Liberty's Motion to Strike[2] (ECF No. 25)**

Liberty argues that the Court should strike the entirety of Richards' Amended Answer and Counterclaims because this pleading was filed outside of the time permitted by Federal Rule of Civil Procedure 15(a)(1) and Richards did not obtain Liberty's consent or leave of Court as required by Federal Rule of Civil Procedure 15(a)(2) or alternatively to strike numerous listed paragraphs and exhibits. ECF Nos. 25; 25-1 at 3-4, 5-9.

### *Request to Strike the Entire Amended Answer and Counterclaims*

Richards filed an Answer on July 23, 2025, which appeared to assert a counterclaim for breach of contract. ECF No. 8. On August 6, 2025, Liberty filed a Motion to Strike Richards' Answer pursuant to Federal Rule of Civil Procedure 12(f). ECF No. 16. Richards filed an Amended Answer and Counterclaims on August 22, 2025. ECF No. 17.

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course (1) 21 days after serving it or (2) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A)-(B). "In all

---

[2] Ordinarily, the undersigned would issue an Order on a motion to strike. However, out of an abundance of caution and given Liberty's request to strike entire counterclaims, which if granted would be dispositive of claims, the undersigned has issued a Report and Recommendation.

other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Richards filed his Amended Answer more than 21 days after serving his original Answer, and he did not seek Liberty's consent or leave from the Court.  However, Richards' Answers contained counterclaims, which constitute pleadings "to which a responsive pleading is required." Fed. R. Civ. P. 15(a); *see GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 101 n.14 (2d Cir. 2019) (noting that new counterclaims are pleadings to which a responsive pleading is required); *Cincinnati Specialty Underwriters Ins. v. Red Rock 4 Wheelers*, 576 F.Supp.3d 905, 918 (D. Utah 2021) ("Counterclaims are a pleading to which a responsive pleading is required…."). Accordingly, Richards' Amended Answer with Counterclaims was timely filed as a matter of course, as Richards filed his Amended Answer within 21 days of Liberty's service of its first Motion to Strike under Federal Rule of Civil Procedure 12(f).  Fed. R. Civ. P. 15(a)(1)(B).

Furthermore, the language of Rule 12(f) allows the court to strike certain matter "from a pleading." Fed. R. Civ. P. 12(f).  This language does not authorize dismissal of an entire pleading. The purpose of a Rule 12(f) motion to strike is to reinforce the requirements of Rule 8 that a pleading be simple, concise, and direct; its purpose is not to secure dismissal of all or a part of claims. 5C Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1380 (3d ed. 2021).  The request by Liberty to "strike" the entire Amended Answer and Counterclaims is not a proper Rule 12(f) motion.

### *Request to Strike Numerous Paragraphs*

Alternatively, Liberty asks that the Court strike certain paragraphs and exhibits in Richards' Amended Answer and Counterclaims.  ECF No. 25-1 at 5-9. Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) allows "courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money." *Cnty. of Dorchester, S.C. v. AT&T Corp.*, 407 F.Supp.3d 561, 565 (D.S.C. 2019) (citation and internal quotation marks omitted). "When reviewing a motion to strike, the court must view the pleading under attack in a light most favorable to the pleader." *Sturdivant v. Cont'l Tire the Americas, LLC*, C/A No. 5:14-cv-2852-JMC, 2015 WL 263015, at *2 (D.S.C. Jan. 21, 2015) (citation and internal quotation marks omitted). "Whether to grant a motion to strike under Rule 12(f) is within the sound discretion of the trial court." *Rivera v. Patterson*, C/A No. 8:23-cv-01107-SAL-JDA, 2023 WL 12100560, at *1 (D.S.C. May 2, 2023).

Striking material under Rule 12(f) is generally disfavored as it is considered a "drastic remedy" and motions to strike are "'often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1380 at 647 (2d ed. 1990)). Generally, a motion to strike is granted only when the allegations in question "have no possible relation or logical connection to the subject matter of the controversy or cause some form of significant prejudice to one or more of the parties to the action." *Yin v. Columbia Int'l Univ.*, C/A No. 3:15-cv-3656-JMC, 2016 WL 5349090, at *4 (D.S.C. Sept. 26, 2016) (citation and internal quotation marks omitted); *see Brown v. Inst. For Fam. Centered Servs., Inc.*, 394 F.Supp.2d 724, 727 (M.D.N.C. 2005) ("Motions to strike are ... granted only for egregious violations.").

Liberty asks that the Court strike 14 of the 33 paragraphs and 9 of the 12 exhibits in the Amended Answer and Counterclaims. ECF Nos. 25 at 2-5; 25-1 at 4-9. Liberty asserts that the Court should strike these paragraphs and exhibits because they are

> (1) not responsive to any specific allegation of the Complaint; (2) immaterial and impertinent to the extent they offer argumentative and conclusory statements unrelated to any claim or defense; (3) prejudicial to the extent they mischaracterize facts or legal standards; and (4) used in contravention to Federal Rule of Evidence 408 ….

ECF No. 25-1 at 1. Liberty largely argues that the challenged paragraphs and exhibits contain allegations relating to Richards' medical expenses and damages, which are irrelevant to Liberty's claims in this matter. *Id.* at 4-9; ECF No. 25 at 2-5. Liberty also asks that the Court strike Richards' counterclaims for improper claims practices and vicarious liability "to the extent [these claims] include[] additional factual allegations not relevant to any claim or defense." ECF No. 25 at 3.

Rule 12(f) is not the proper mechanism for Liberty's requests that the Court rule on substantive issues, admissibility issues, and challenges to Richards' version of the facts. *See GTSI Corp. v. Wildflower Int'l, Inc.*, C/A No. 1:09-cv-123-JCC, 2009 WL 2160451, at *10 (E.D. Va. July 17, 2009) (noting that in a motion to strike, a litigant's "argument that the allegations are false is irrelevant" because whether the allegations "are true and supportable by admissible evidence will be borne out in discovery."); *Frasier v. Alden*, C/A No. 4:21-cv-0031-DCC-TER, 2023 WL 2143893, at *1 (D.S.C. Jan. 9, 2023) ("[A] motion to strike under Rule 12(f) is not a mechanism for deciding disputed issues of law or fact ….") (citation and internal quotation marks omitted); *Modern Pharm., LLC v. J M Smith Corp.*, C/A No. 7:19-cv-1218-TMC, 2020 WL 13490927, at *3-4 (D.S.C. Mar. 18, 2020) (noting that "simply disputing or denying an allegation is not a sufficient ground to strike it" and that "[b]y their very nature, pleadings will often contain allegations that are ultimately found to be untrue, but this does not render the pleadings improper or subject to being stricken at the beginning of the litigation process.") (citations and internal quotation marks omitted).

Recognizing that motions to strike are disfavored and viewing the Amended Answer and Counterclaims in the light most favorable to Richards, the undersigned concludes that Liberty's Motion to Strike should be denied. Many of the challenged paragraphs and exhibits contain background information relevant to the claims and counterclaims. Despite Liberty's assertions to the contrary, information relating to Richards' damages could be relevant to the claims and counterclaims at issue.

Liberty also argues that Richards' vicarious liability counterclaim is not a compulsory or permissive counterclaim because neither the independent driver nor Uber have been named as parties in this action. ECF No. 25-1 at 6. In this claim, Richards alleges that Liberty and Uber are vicariously liable for the independent driver's negligence for failing to report and document the accident. ECF No. 17 ¶¶ 29-31. Federal Rule of Civil Procedure 13 provides that counterclaims are compulsory, subject to certain exceptions, "if the claim … arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). Moreover, "[a] pleading may state as a counterclaim against an opposing party any claim that is not compulsory." Fed. R. Civ. P. 13(b). Although Richards mentions alleged wrongdoing from Uber, Richards has only brought claims against Liberty. *See* ECF No. 17. Accordingly, the undersigned declines to recommend that the district court strike the paragraphs containing Richards' vicarious liability claim against Liberty merely because he also describes alleged wrongdoing by a nonparty. While the undersigned questions whether Richards may ultimately prevail on his vicarious liability claim against Liberty, this claim falls under the counterclaims set forth in Federal Rule of Civil Procedure 13.

Liberty has not shown any "egregious violations" that would warrant striking these paragraphs and exhibits, *Brown*, 394 F.Supp.2d at 727, or that the paragraphs and exhibits at issue "have no possible relation or logical connection to the subject matter of the controversy," *Yin*, 2016 WL 5349090, at *4. Therefore, the undersigned recommends that the district court **DENY** Liberty's Motion to Strike. (ECF No. 25)

**Liberty's Motion for Preliminary Injunction (ECF No. 22)**

Liberty filed a Motion for Preliminary Injunction seeking the following:

> 1. That the Defendant be restricted from communicating directly by email, text, internet, telephone, or facsimile directly with any and all agents/members/employees/adjusters/insureds/ managers/executives/claims professionals/customer service professionals/online platforms of Liberty Mutual;
>
> 2. That the Defendant be restricted from communicating directly by email, text, internet, telephone, or facsimile directly with any and all agents/employees/lawyers/managers/partners/ paralegals/secretaries of LaFave Bagley, LLC;
>
> 3. That the Defendant must file any communications related to this claim with a Court of competent jurisdiction or may retain the services of an attorney, licensed to practice in South Carolina, to communicate directly with counsel of record
>
> …

ECF No. 22-1 at 17. Liberty contends that Richards has sent numerous threatening, hostile, and unreasonable communications to individuals at Liberty, Liberty's counsel, and Liberty's counsel's law firm. *Id.* at 1-10; *see* ECF Nos. 22-3; 22-5.

In Response, Richards asserts that Liberty's request is now moot because he has expressly ended all email and phone contact with Liberty's counsel and that all further communications will be made via United States mail or the Court. ECF No. 28 at 2.

Based on Richards' Response, the undersigned recommends that the district court find Liberty's Motion for Preliminary Injunction **MOOT**.  In the future, should Richards, contrary to his representation to the Court, contact individuals at Liberty, Liberty's counsel, or Liberty's counsel's law firm in a threatening, hostile, or unreasonable manner, Liberty may file another motion.

**Liberty's Motion for Summary Judgment (ECF No. 31)**

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324.  Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.*  Under this standard, the existence of a mere scintilla of evidence

in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Declaratory Judgment*

Liberty requests that the Court grant its Motion for Summary Judgment on its claims for the following declarations:

> a. Because the Independent Driver was not at fault for the subject accident, and the information about the at-fault driver is unknown, the Policy's uninsured motorist coverage applies;
>
> b. The amount of the uninsured motorist coverage is $25,000.00 per person for the subject accident;
>
> c. To the extent that Defendant has made a claim for damages that the Court will permit to proceed in this posture, Defendant is entitled to uninsured motorist coverage from Liberty causally related to the subject accident but not in excess of the per person maximum as reflected in the policy declarations;
>
> d. To the extent that Defendant has made a claim for damages that the Court will permit to proceed in this posture, any and all of Defendant's medical visits after his initial emergency room visit are unrelated to the subject accident;
>
> e. Liberty is not obligated to extra-contractual payment of insurance coverage due to the policy terms;
>
> f. Liberty has articulated a good faith basis for its position on the value of the claim and applicable coverage ….

ECF Nos. 1 ¶ 38; 31-1 at 10.

The Declaratory Judgment Act provides that this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilson v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citations and internal quotation marks omitted); *see United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (noting that the "permissive language" in the Declaratory Judgment Act provides "discretionary authority to district courts to hear declaratory judgment cases."). A declaratory judgment action is appropriate (1) "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (citations and internal quotations omitted).[3]

"When a federal court sits in diversity jurisdiction, it applies federal procedural law and state substantive law." *Carolina Cargo Inc. of Rock Hill v. Countrywide Payroll & HR Sols., Inc.*, C/A No. 0:16-cv-03249-JMC, 2018 WL 1443947, at *1 (D.S.C. Mar. 23, 2018) (citation omitted). Under South Carolina law, "[i]nsurance policies are subject to general rules of contract construction." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary,

---

[3] Neither party challenges this federal court exercising its discretion to make recommendations and rule on the declaratory judgment claims, and the undersigned finds that doing so is appropriate under these circumstances.

13

and popular meaning." *Whitlock v. Stewart Title Guar. Co.*, 732 S.E.2d 626, 614 (S.C. 2012) (citations and internal quotation marks omitted). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." *Goldston v. State Farm Mut. Auto. Ins. Co.*, 594 S.E.2d 511, 518 (S.C. Ct. App. 2004) (citation and internal quotation marks omitted). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

### *Uninsured Motorist Coverage and Policy Limits*

Liberty contends that the policy's uninsured motorist coverage applies to the subject accident and that the applicable uninsured policy limits are $25,000 per person for bodily injury. ECF No. 31-1 at 6-7. Richards claims that the policy's commercial liability coverage applies and that the applicable policy limits are $1,000,000. ECF No. 38 at 2.

"A motor vehicle is considered uninsured if the owner or operator is unknown." S.C. Code Ann. § 38-77-30(14). Richards argues that there is a genuine issue of material fact regarding the identity of the at-fault driver because of allegations that the independent driver exited the vehicle and spoke to the at-fault driver after the accident. ECF No. 38 at 2. However, it is undisputed that the independent driver and at-fault driver did not exchange information after observing that there was no property damage, and neither Liberty nor Richards knows the identity of the at-fault driver. ECF Nos. 1 ¶ 12; 31-1 at 6; 28 at 3. Accordingly, Richards' bare assertion that a genuine issue of material fact exists because the two drivers spoke to each other is not evidence that the at-fault driver's identity is known. *See Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir. 2015) ("[A] party cannot withstand summary judgment by relying solely on his own self-serving allegations

14

unsupported by any corroborating evidence.") (citation omitted).  Because there is no genuine issue of material fact that the at-fault driver's identity is unknown, the undersigned recommends that the district court find that the motor vehicle of the at-fault driver is considered uninsured under S.C. Code Ann. § 38-77-30(14) and, as such, Liberty's policy's uninsured motorist coverage applies.

The Declaration Pages for the policy at issue were submitted as an exhibit. ECF No. 31-4 Neither party disputes that the Declaration Pages correctly provide the amounts of insurance available under the policy.[4]  According to Declaration Pages for Liberty's policy, the uninsured motorist bodily injury coverage limits are $25,000 per person and $50,000 per accident.  ECF No. 31-4 at 4.[5]  Therefore, the undersigned further recommends that the district court find that the amount of the uninsured motorist coverage is $25,000.00 per person for bodily injury from the subject accident and grant Liberty's Motion for Summary Judgment on this requested declaration.

### Causal Relation

Liberty requests a declaration that Richards is entitled to uninsured motorist coverage from Liberty causally related to the subject accident but not in excess of the per person maximum as reflected in the policy declarations.  ECF No. 31-1 at 7-8, 10.

South Carolina law provides for a cause of action against insurance companies for uninsured motorist coverage under certain circumstances when the at-fault driver is unknown.  *See*

---

[4] The only dispute is which coverage identified on the Declaration Pages applies to the accident at issue.  Richards argues that the liability limit of $1,000,000 applies.  *See* ECF No. 31-4 at 3.

[5] The policy further provides that the uninsured motorist property damage coverage limits are $25,000 per accident.  ECF No. 31-4 at 4.

S.C. Code Ann. § 38-77-170(A). "Section 38-77-170 enables recovery for injuries *caused by* a phantom driver if three requirements are satisfied." *Silva for Estate of Silva v. Allstate Prop. & Cas. Ins. Co.*, 818 S.E.2d 753, 755 n.1 (S.C. 2018) (emphasis added); *see also Sossamon v. Nationwide Mut. Ins. Co.*, 135 S.E.2d 87, 91 (1964) ("The plaintiff may recover for the necessary and reasonable expense caused by the injury ….").

Accordingly, the undersigned recommends that the district court find that Richards is entitled to uninsured motorist coverage from Liberty for bodily injuries proven to be causally related to the subject accident but not in excess of the policy's $25,000 per person maximum.

### Medical Expenses

Liberty also requests a declaration that, to the extent that Richards has made a claim for damages that the Court will permit to proceed in this posture, any and all of Richards' medical visits after his initial emergency room visit are unrelated to the subject accident. ECF No. 31-1 at 8-9, 10. Further, Liberty seeks a declaration that it has articulated a good faith basis for its rejection of any and all of Richards' medical visits after his initial emergency room visit because the subsequent visits are unrelated to the subject accident. *Id.*

Richards alleges that he suffered significant injuries from this accident, including dental trauma, a concussion/mild TBI, a cervical strain, and aggravation of his pre-existing injuries from earlier accidents. ECF No. 17 ¶ 4. Richards contends that he had previous injuries from a tractor-trailer accident on December 7, 2023, an accident involving a federal probation officer on June 10, 2024, and an accident with a drunk driver on July 16, 2024. *Id.* ¶ 6. Richards argues that the record contains genuine disputes regarding the extent of his injuries. ECF No. 38 at 3.

Richards sought medical treatment at Spartanburg Medical Center on the day of the accident. ECF No. 31-6 at 3. X-rays of Richards' cervical and lumbar spine reflected "normal"

findings with "[n]o evidence of acute fractures, dislocations or neck injuries or low back injuries." *Id.* Richards called the police to make a report and showed the reporting officer a video. ECF No. 31-2 at 2. The reporting officer documented that he "observed no physical damage to the vehicle. There was no evidence on the video that the vehicle was involved in a collision." *Id.* After examination at Spartanburg Medical Center, Richards was diagnosed with an acute cervical strain. ECF No. 31-6 at 3-4. Richards was prescribed Motrin and Robaxin and released from care. *Id.* at 3. Approximately one month later, Richards sought medical treatment at Grady Hospital Emergency Department, where he underwent further diagnostic testing, including a CT scan of his head and brain, a CT scan of his cervical spine, an x-ray of his femur, and an x-ray of his foot. ECF No. 31-7 at 2. Richards attached notes from Grady Hospital Emergency Department, which stated that Richards presented with complaints following a motor vehicle crash in February and listed "concussion/mild TBI." ECF No. 17-2 at 6. His after-visit summary listed his diagnoses as "history of seizures" and "headache due to trauma." *Id.* at 7. Richards was referred to a neurologist. *Id.* at 6-7. Notes also reflect that Richards reported hitting his head on the back of the seat in the accident and was experiencing headaches, neck pain, and pain in his femur. *Id.* at 8. Richards also attached documentation regarding his previous accidents. *Id.* at 12-27.

Liberty's Motion on these points essentially asks the Court to weigh the facts regarding the extent of the alleged injuries. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage[,] the judge's function is not … to weigh the evidence and determine the truth of the matter …."). The Court finds that genuine issues of material fact preclude granting Liberty's Motion for Summary Judgment on these requested declarations. There is evidence that no physical damage was observed on the vehicle. Moreover, medical records from Richards' visit to Spartanburg Medical Center reflect some normal findings. However, medical records also reflect that Richards

was diagnosed with a cervical strain and prescribed medication following the accident. Additionally, notes list "concussion/mild TBI" and reflect that Richards presented to Grady Hospital with complaints following a motor vehicle crash in February; reported hitting his head on the back of the seat in the accident; and complained of headaches, neck pain, and pain in his femur. Richards was referred to a neurologist. Given the current record, the undersigned cannot conclude as a matter of law that Richards' medical treatment following the initial visit to Spartanburg Medical Center was not causally related to the subject accident. Thus, the undersigned recommends that Liberty's Motion be denied on these requested declarations.

### Extra-Contractual Payment

Liberty seeks a declaration that it is not obligated to extra-contractual payment of insurance coverage due to the policy terms. ECF No. 31-1 at 7-8, 10. "A tort action for an insurer's bad faith refusal to pay benefits does not extend to third parties who are not named insureds." *Kleckley v. Northwestern Nat'l Cas. Co.*, 526 S.E.2d 218, 219 (S.C. 2000); *see Tadlock Painting Co. v. Md. Cas. Co.*, 473 S.E.2d 52, 54 & n.4 (S.C. 1996) (noting that insureds are "entitled to receive the additional security of knowing that [they] will be dealt with fairly and in good faith," and "[t]he function of [a] bad faith claim is to provide the insured with an extra-contractual remedy.") (citations omitted). The South Carolina Supreme Court and the South Carolina Court of Appeals "have repeatedly denied actions for bad faith refusal to pay claims to third parties who are not named insureds." *Kleckley*, 526 S.E.2d at 219.

Richards is not a party to the policy, which is a contract between Liberty and Rasier LLC/Uber Technologies, Inc. and its subsidiaries. ECF No. 31-4 at 2. Accordingly, Liberty's duty of good faith "does not extend" to Richards. *See Charleston Dry Cleaners & Laundry, Inc. v.*

*Zurich Am. Ins. Co.*, 586 S.E.2d 586, 588 (S.C. 2003). Therefore, Richards cannot raise any bad faith claims against Liberty.

As a result, the undersigned recommends that the district court grant Liberty's Motion for Summary Judgment on this requested declaration and find that Liberty is not obligated to make any extra-contractual payment to Richards for bad faith.

### *Injunctive Relief*

Liberty also moves for summary judgment on its claims for injunctive relief. ECF No. 31-1 at 2, 10-11. Specifically, Liberty seeks the following permanent injunctions:

1. That the Defendant be restricted from communicating directly by email, text, internet, telephone, or facsimile directly with any and all agents/members/employees/adjusters/insureds/ managers/executives/claims professionals/customer service professionals/online platforms of Liberty Mutual;

2. That the Defendant be restricted from communicating directly by email, text, internet, telephone, or facsimile directly with any and all agents/employees/lawyers/managers/partners/ paralegals/secretaries of LaFave Bagley, LLC;

3. That the Defendant must file any communications related to this claim with a Court of competent jurisdiction or may retain the services of an attorney, licensed to practice in South Carolina, to communicate directly with counsel of record

…

*Id.* As discussed above, however, Richards has indicated that he has ceased all email and phone communications with Liberty's counsel and that all further communications will be made via United States mail or the Court. ECF No. 28 at 2. Based on the foregoing, the Court recommends that the district court find Liberty's Motion for Summary Judgment on these claims **MOOT**. To the extent Richards, contrary to his representations to the Court, engages in new communications

with individuals at Liberty, Liberty's counsel, or Liberty's counsel's law firm in a threatening, hostile, or unreasonable manner, Liberty may file another motion.

**Richards' Motion for Summary Judgment (ECF No. 24)**

Richards moved for summary judgment on his counterclaims. ECF No. 24. Richards brought counterclaims for (1) declaratory judgment "that coverage exists and policy limits apply"; (2) third-party beneficiary enforcement based on Liberty's refusal to honor obligations owed to Richards as an intended beneficiary of the insurance policy; (3) improper claims practices in violation of S.C. Code Ann. § 38-59-20 based on Liberty's refusal to pay, "misrepresentations, delay, failure to investigate, and inadequate settlement tactics"; (4) fraud by omission based on Liberty knowingly concealing the $1,000,000 policy limit and misleading Richards into believing that the policy limit was $25,000; (5) negligence and vicarious liability based on the independent driver's failure to report or document the accident; and (6) punitive damages. ECF No. 17.

In the Motion for Summary Judgment, Richards argues that judgment should be entered in his favor as a sanction for Liberty's conduct and misrepresentations during discovery. ECF No. 24 at 1-7. Specifically, Richards asserts that he is entitled to judgment because (1) Liberty responded to his discovery requests on the same day that he mailed them, (2) Liberty's responses were not responsive to his requests but instead were interrogatories that Liberty drafted, (3) Liberty objected to many of the requests, and (4) Liberty misdated the date of loss as occurring on July 2024. *Id.* at 1-3. Richards asserts that "[n]o reasonable jury could credit Liberty's defense after

this documented misconduct," contends that "[t]he only remedy that restores integrity is entry of judgment in Richards' favor," and requests $2,000,000 in damages. *Id.* at 4, 6.[6]

Richards attached to the Motion for Summary Judgment an Affidavit in which he states that he mailed discovery requests to Liberty's counsel on August 19, 2025, at approximately 4:47 p.m. ECF No. 24-4 ¶ 2. Richards asserts that he also attached "USPS proof of mailing/receipt for that mailing," but the undersigned notes that he did not attach this documentation to his Motion for Summary Judgment. *Id.*; *see* ECF Nos. 24; 24-1; 24-2; 24-3; 24-4; 24-5. However, Richards has seemingly provided this proof of mailing documentation as attachments to his Motion for Sanctions, which the undersigned ruled on in a separate Order. ECF No. 23-2 at 2, 24-25. Richards attached to his Motion for Sanctions a photograph of an envelope that he received from Liberty on August 19, 2025, and a receipt from the United States Postal Service from August 19, 2025. *Id.* at 25.

In Response, Liberty argues that Richards' Motion for Summary Judgment should be denied. ECF No. 32. Liberty attached to its Response a copy of the discovery requests that it received from Richards via email on July 22, 2025. ECF No. 32-1 at 8-12.[7] Liberty also attached its responses to these requests that it sent to Richards on August 19, 2025. ECF No. 32-2 at 2-17. Liberty asserts that it subsequently received more discovery requests from Richards on August 19,

---

[6] Richards also argues that Liberty misrepresented that the at-fault driver was unknown when the evidence shows that the independent driver spoke to the at-fault driver at the scene. As discussed above, however, it is undisputed that the independent driver and at-fault driver did not exchange information after observing that there was no property damage, and neither Liberty nor Richards knows the identity of the at-fault driver. ECF Nos. 1 ¶ 12; 31-1 at 6; 28 at 3. Accordingly, Richards' argument on this issue is without merit.

[7] In these requests, Richards listed the accident date as July 2024. ECF No. 32-2 at 9.

2025, and attached a copy of those requests.  ECF Nos. 32 at 3; 32-3 at 2-27.  At the time Liberty

filed its Response to the Motion for Summary Judgment, Liberty asserted that its responses to

Richards' August 19, 2025, discovery requests were not yet due.  ECF No. 32 at 3.  Liberty

indicated that it intended to timely respond to those requests.  *Id.*

     Richards has not shown that he is entitled to judgment as a matter of law on his

counterclaims based on Liberty's conduct during discovery.  The Court has reviewed the responses

and objections and finds them to be appropriate.  *See* ECF Nos. 32-1; 32-2; 32-3; *see also* Fed. R.

Civ. P. 33, 34, 36.  No conduct documented in the record supports an award of sanctions, much

less the sanction sought.  *See Pennington v. Fluor Corp.*, C/A Nos. 0:17-cv-02094-JMC, 0:17-cv-

02201-JMC, 2019 WL 1979674, at *4 (D.S.C. May 3, 2019) ("Since our system favors the

disposition of cases on the merits, dismissal is a sanction of last resort ….") (quoting *Trakas v.

Quality Brands, Inc.*, 759 F.2d 185, 186-87 (D.C. Cir. 1985)); *Miller v. Comfort*, C/A No.

1:19cv1252 (AJT/JFA), 2020 WL 14046132, at *2 (E.D. Va. 2020) ("[A] sanction of dismissal

should be used only as a last resort and in cases where there is bad faith or other egregious

conduct.").  Therefore, the undersigned recommends that the district court **DENY** Richards'

Motion for Summary Judgment.

## <u>CONCLUSION AND RECOMMENDATION</u>

     Based on the foregoing, it is recommended that the district court find Liberty's Motion for

Preliminary Injunction **MOOT** (ECF No. 22) and **DENY** Liberty's Motion to Strike (ECF No. 25)

and **DENY** Richards' Motion for Summary Judgment (ECF No. 24).

     It is further recommended that the district court find **MOOT** Liberty's Motion for

Summary Judgment regarding its claims for injunctive relief and **GRANT in part** and **DENY in

part** Liberty's Motion for Summary Judgment as to its claims for declaratory judgment.  ECF No.

31.  Specifically, the undersigned recommends that the district court **GRANT** Liberty's Motion for Summary Judgment as to its claims for declarations that (1) because the independent driver was not at fault for the subject accident, and the at-fault driver is unknown, the policy's uninsured motorist coverage applies; (2) the amount of the uninsured motorist coverage is $25,000.00 per person for bodily injury; (3) Richards is entitled to uninsured motorist coverage from Liberty causally related to the subject accident but not in excess of the per person maximum as reflected in the policy declarations; and (4) Liberty is not obligated to extra-contractual payment of insurance coverage.  The undersigned recommends that the district court **DENY** Liberty's Motion for Summary Judgment regarding the remaining declarations sought at this stage.

Should the district court adopt this Report and Recommendation, the matter will proceed with Richards' counterclaims and Liberty's claims for declarations that (1) any and all of Richards' medical visits after his initial emergency room visit are unrelated to the subject accident and (2) Liberty has articulated a good faith basis for its rejection of any and all of Richards' medical visits after his initial emergency room visit because the subsequent visits are unrelated to the subject accident.

**IT IS SO RECOMMENDED.**

s/William S. Brown
United States Magistrate Judge

November 20, 2025
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page*

23

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).